**Estate of Hawkes**

C.P. of Lycoming County, No. 41-11-0461

LOVECCHIO, *J.*, Aug. 3, 2014—This matter came before the court on a petition filed by the Estate of William H. Hawkes, III ("Estate") to compel Mary Jo Samuel ("Samuel") to transfer a time share in the Manhattan Club to the Estate. Samuel contended that, as a matter of law, the Estate was not entitled to the relief requested. The relevant facts follow.

On April 18, 2001, a time share in the Manhattan Club was purchased and titled in Samuel's name. William H. Hawkes, III ("Hawkes") made more than ninety percent (90%) of the monthly payments to purchase the time share. According to Samuel's deposition testimony and her statements to agent Ronald Bachman of the Williamsport Bureau of Police, Hawkes didn't want the property titled in his name and wanted the property in Samuel's name because it would become community property if it was in his name and his wife divorced him. Hawkes left the marital residence and moved in with Samuel in December 2002, but he and his wife never divorced.

Hawkes died on May 21, 2011. Following his death, several individuals filed claims against the estate, alleging that Hawkes obtained money from them by fraudulent means and used their money for his own personal gain. Samuel also alleged that she was a victim of Hawkes. She filed a lawsuit against the estate with damage claims in excess of $800,000.

The estate filed a petition to compel Samuel to transfer the Manhattan Club time share to the estate. In opposing the petition, Samuel raised the defenses of merger by deed, the statute of frauds, and a claim of offset with

respect to her claims for monetary damages.[1] She averred that the time share was titled in her name alone and was never titled in Hawkes' name, and she paid maintenance expenses, annual fees and taxes on the time share.

## DISCUSSION

Samuel first contends that the relief requested by the estate is barred by the doctrine of merger by deed. The court cannot agree.

The doctrine holds that "all warranties and representations in connection with a sale or other transaction made prior to or contemporaneous with a deed are merged into the deed and that unless therein expressly provided for, they are forever lost." *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771, 775 n.11 (1972); *see also Wade v. Huston*, 877 A.2d 464, 465 (Pa. Super. 2005). Stated another way, the doctrine provides a general rule that "an agreement of sale merges into the deed and no recovery can be had based upon an earlier agreement." *Pa. Elect. Co. v. Waltman*, 620 A.2d 1165, 1170 (Pa. Super. 1995). There are exceptions to the merger rule, however, "when the intention of the parties is otherwise, or where the stipulations in the contract sought to be enforced are collateral to the functions performed by the deed." *Carsek Corp. v. Stephen Schifter, Inc.*, 431 Pa. 550, 246 A.2d 365, 369 (1968).

The court finds that the doctrine of merger by deed does not apply to the facts and circumstances of this case. The doctrine was designed to govern the relationship between parties on opposite sides of a real estate sale or transaction; it was not designed to permit individuals to hide assets from spouses or creditors. There was no buyer/seller relationship

---

1. Samuel did not brief any choice of laws or statute of limitations issues. Therefore, the court will consider these issues waived.

between Samuel and Hawkes. The seller of the time share was T. Park Central LLC (a/k/a The Manhattan Club).

Furthermore, it appears that Hawkes was the actual purchaser of the time share. Documents contained in exhibit C of the estate's petition clearly show that the down payment and the monthly payments were charged to Hawkes' credit cards. Samuel's deposition testimony and her statements to agent Bachman also show that Hawkes made over 90% of the payments on the time share and the only reason the time share was titled in her name was because Hawkes was trying to keep it from being considered marital property in the event his wife divorced him. In other words, Samuel's own statements show that Samuel was nothing more than a straw purchaser so that the actual purchaser, Hawkes, could hide this asset from his wife.

Samuel argues that Hawkes defrauded her of hundreds of thousands of dollars, making it extremely likely that any funds Hawkes may have used to purchase the time share were actually her funds. The court cannot agree. Samuel is not the only individual claiming that Hawkes defrauded her. There are several other individuals who have made similar claims against the estate. There is nothing in the record to show that the money Hawkes may have used to purchase the time share came from Samuel's funds as opposed to the funds of the other claimants or his own funds.

Even if the doctrine of merger applied, it would only preclude the estate's claim if the parties intended such a result. *See Wade v. Huston*, 877 A.2d 464, 465 (Pa. Super. 2005). The intent of the arrangement between Samuel and Hawkes was not to preclude Hawkes from making an ownership claim against Samuel; it was to keep Hawkes' wife from obtaining an interest in the time share in the event of a divorce. Therefore, the doctrine of merger by

deed does not preclude the estate's claim in this case.

Samuel also contends that the estate's claim fails due to the statute of frauds. Again, the court cannot agree.

The statute of frauds generally mandates that contracts for the sale of property be in writing. 33 P.S. §1; *Rosen v. Rittenhouse Towers*, 334 Pa. Super. 124, 482 A.2d 1113,1116 (1984). "The purpose of the statute is to prevent the possibility of enforcing unfounded, fraudulent claims, by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest." *Rosen*, 482 A.2d at 1116-1117. The statute of frauds, though, is also subject to several exceptions. One such exception is where a titleholder admits that she entered into an oral contract. *Rosen*, 482 A.2d at 1117. Similarly, "partial performance, which has benefited the party invoking the statute, will in appropriate circumstances, bar the invocation of the rule." *In re Estate of Brojack*, 467 A.2d 1175, 1182 (Pa. Super. 1983).

In her deposition and her statements to agent Bachman, Samuel readily admitted that Hawkes made over 90% of the payments to purchase the time share, but he didn't want his name on the title so it wouldn't be a problem if he and his wife divorced. Under the facts and circumstances of this case, the estate is not making a fraudulent claim. Hawkes clearly had an ownership interest in the time share; he just did not want a public record of any such interest.

Samuel's final argument is that the estate cannot compel her to transfer the time share because she has the right to retain the property by offsetting her damages due to Hawkes' fraudulent conversion of her own funds. The Estate counters that Samuel already settled and released her claim against the estate; therefore Samuel no longer has a claim for offset.

The court rejects Samuel's set-off argument for several reasons. Samuel's claims against the estate relate to Hawkes' allegedly fraudulent conversion of various insurance policies, annuities, retirement investments, and accounts. Samuel, however, released and discharged the estate from most, if not all, of these claims in the third paragraph of the settlement and release, which Samuel signed on January 24, 2014 and the estate signed on January 17, 2014. Furthermore, to the extent that any fraudulent conversion claim remains, it is an unsecured claim just like the similar claims made by the other claimants. It appears that the estate is insolvent. The time share was titled in Samuel's name because she was romantically involved with Hawkes and he was trying to keep the time share from becoming marital property in the event of a divorce. It would be patently unjust and inequitable to deprive the other claimants of a portion of the value this asset when it appears that Hawkes was the true purchaser of this asset and Samuel was the purchaser in name only.

## ORDER

And now, this 3rd day of August 2014, the court denies Samuel's arguments that the Estate cannot prevail on its petition as a matter of law. The parties shall have thirty (30) days within which to submit any additional transcripts, depositions, documents or other evidence so the court can issue a final decision on the merits.[2]

---

2. The court was under the impression that the parties had agreed that the facts really were not in dispute and the court would decide this matter on the merits on the documents submitted and the parties' briefs. Samuel's brief, however, reads as if the decision was to be more like one on preliminary objections in the nature of a demurrer or a motion for judgment on the pleadings. Therefore, the court will give the parties a further opportunity to submit additional evidence or argument.