J-S15017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANGELA M. BOTZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN P. BOTZ III | |
| Appellant | No. 1604 MDA 2014 |

Appeal from the Order Entered on September 8, 2014
In the Court of Common Pleas of Lebanon County
Civil Division at No.: 2011-20769

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                       **FILED APRIL 17, 2015**

John P. Botz III ("Husband") appeals the September 8, 2014 order that denied his motion to enforce a marriage settlement agreement ("MSA"). We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> Angela M. Botz ["Wife"] and Husband were married on August 29, 2007.  Wife filed for Divorce on October 19, 2011.  On [October 9, 2011[1]], the parties entered into a [MSA].  On June 21, 2013, Wife filed a Petition to Enforce the Marriage Settlement Agreement.  A Hearing was scheduled for August 6, 2013.  On July 22, 2013, a Motion to Withdraw the Petition was granted by the [trial c]ourt as the parties had reached a resolution prior to the scheduled hearing.

_____

[1]    The parties executed the MSA on October 9, 2011.  It was docketed on February 21, 2012 and incorporated, but not merged, into the February 22, 2012 divorce decree.

On May 12, 2014, Husband filed a Petition to Enforce the Marriage Settlement Agreement. Specifically, Husband claim[ed] that according to the terms of the [MSA], Wife agreed that the proceeds from the sale of a marital property were to [be used to] pay off a line of credit. The [MSA] was originally drafted by Husband's attorney. The parties negotiated through their respective attorneys and came to a final agreement. The final draft of the [MSA] contained the following provision:

> HUSBAND and WIFE agree to sell the Mifflin County real estate for the best price obtainable and, after payment of any sales and transfer costs, and payment of any outstanding liens, the remaining proceeds shall be applied to the line of credit owed to Northwest Bank. If there are any remaining proceeds after payment of the line of credit, the proceeds shall be divided equally between HUSBAND and WIFE.

Marital Settlement Agreement, dated October 9, 2011, paragraph 9.

On September 22, 2011, prior to the parties signing the [MSA], Husband's parents had paid off in full the line of credit specified in the [MSA]. At the time, Husband was aware that his parents were paying off the line of credit owed to Northwest Bank, but Wife claim[ed] that she was not aware of this fact. The [MSA] is dated October 9, 2011 and was signed by both parties. Husband's mother signed as witness for Husband.

In his Petition to Enforce, Husband avers that he and Wife are equally responsible for reimbursing his parents for this payment under the terms of the [MSA]. The Mifflin County real estate was sold on October 25, 2013 for $45,000.00. The proceeds of the same in the amount of $43,339.50 were placed in escrow by agreement of the parties pending resolution of Husband's Petition to Enforce the Marriage Settlement Agreement. A hearing was held before [the trial c]ourt on June 24, 2014.

Trial Court Memorandum and Order ("T.C.M."), 9/8/2014, at 2-3.

On September 8, 2014, the trial court denied Husband's motion. On September 24, 2014, Husband filed a timely notice of appeal. The trial court

ordered, and Husband timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Husband raises one issue on appeal: "Did the lower court err and/or abuse its discretion in denying [Husband's] Petition to Enforce Marital Settlement Agreement by failing to properly consider the intention of the parties, thereby resulting in an unintended windfall to [Wife?]" Husband's Brief at 4.

Our standard of review is well settled:

When interpreting a marital settlement agreement, "the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." **Chen v. Chen**, 840 A.2d 355, 360 (Pa. Super. 2003), *appeal granted in part*, 853 A.2d 1011 (Pa. 2004). On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

"[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

**In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960**, 590 A.2d 1, 3 (Pa. 1991) (internal citations omitted). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." **Chen**, *supra* at

360. "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." ***Kripp v. Kripp***, 849 A.2d 1159, 1164 n.5 (Pa. 2004). However, we are bound by the trial court's credibility determinations. ***Wade v. Huston***, 877 A.2d 464 (Pa. Super. 2005).

***Stamerro v. Stamerro***, 889 A.2d 1251, 1257-58 (Pa. Super. 2005)

(footnote and some citations omitted; citations modified).

We also note that:

In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. . . .

It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties['] understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used. Conversely, when the language is ambiguous and the intentions of the parties cannot be reasonably ascertained from the language of the writing alone, the parol evidence rule does not apply to the admission of oral testimony to show both the intent of the parties and the circumstances attending the execution of the contract.

***Lang v. Meske***, 850 A.2d 737, 739-40 (Pa. Super. 2004) (quoting ***Osial v. Cook***, 803 A.2d 209, 213-14 (Pa. Super. 2002)) (citations omitted).

Husband asserts that the MSA is not ambiguous. Instead, Husband argues that the parties intended to sell the Mifflin property, satisfy the line of credit, and then split the remaining proceeds of the sale. Husband contends that the trial court disregarded the intent of the parties in deciding that Husband and Wife did not need to reimburse Husband's parents after they paid off the line of credit. Therefore, Wife would receive an unintended windfall. Husband's Brief at 9-11.

Wife agrees that the MSA was not ambiguous. Wife argues that the MSA is clear that the Mifflin property would be sold and then costs of sale, liens, and the Northwest Bank line of credit would be paid before the parties split the remainder. Wife asserts that she was unaware that Husband's parents paid off the line of credit before the MSA was signed and that Husband signed the MSA knowing that the line of credit had been paid off without telling her. Wife argues that the MSA only contemplates paying the Northwest Bank line of credit and does not speak to paying a personal loan or reimbursement to Husband's parents. Because the MSA is not ambiguous, Wife contends that the court cannot re-write the contract to include a clause for reimbursement to Husband's parents. Wife's Brief at 6-9.

The trial court found that the MSA was unambiguous. The trial court determined that the MSA contemplated paying costs and fees of sale, outstanding liens, and the Northwest Bank line of credit prior to the distribution of the proceeds. T.C.M. at 4. The trial court reasoned that the

line of credit no longer existed and that the MSA contained no provision for repaying Husband's parents. The trial court found that Husband knew the line of credit was retired prior to finalizing the MSA. *Id.* The trial court found, and the record supports, that Wife was unaware that the line of credit was paid prior to signing the MSA. *Id.*; Notes of Testimony ("N.T."), 6/24/2014, at 8. Husband's counsel prepared the MSA. *Id.* at 16, 24.

Neither party argues that the MSA is ambiguous. We agree and therefore, are bound by the plain language of the MSA. *Lang*, *supra*. The MSA clearly delineates the debts that are to be paid from the proceeds of the Mifflin property. Those debts do not include any personal liability or reimbursement to Husband's family. Further, Husband was the only party to the MSA who was in a position to know that the line of credit listed in the provision no longer existed. Husband's attorney drafted the MSA. Husband could have requested that his attorney update the MSA to reflect a loan from Husband's parents. He chose not to do so. Because the language of the MSA is unambiguous, we may not look beyond the document to examine Husband's intention. We cannot re-write the MSA or "modify the plain meaning of the words under the guise of interpretation." *Lang*, 850 A.2d at 740. Therefore, the trial court did not err in denying Husband's motion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/17/2015</u>